# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE CRACKED EGG, LLC, | CIVIL DIVISION |
| Plaintiff, | 2:20-cv-01434 |
| v. | |
| COUNTY OF ALLEGHENY, a political subdivision of the Commonwealth of Pennsylvania and the ALLEGHENY COUNTY HEALTH DEPARTMENT, | |
| Defendants. | |

## **DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS**

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendants Allegheny County and Allegheny County Health Department ("ACHD"), by and through their undersigned legal counsel, file this BRIEF IN SUPPORT OF MOTION TO DISMISS:

### I. PROCEDURAL BACKGROUND

**A. State Court Proceeding**

On September 16, 2020, Allegheny County, acting by and through the ACHD filed a Complaint and Emergency Motion for Preliminary Injunction against The Cracked Egg, LLC ("TCE") in The Court of Common Pleas of Allegheny County at No. GD-20-9809. (Ex. A: *The State Court Complaint.*) The State Court Complaint alleges two counts:

I.) Violation of Commonwealth of Pennsylvania Covid-19 Control Measure Orders: Universal Face Covering and Other Mitigation Measures
II.) Violation of Article III §337.1 of Allegheny County Code of Ordinances Chapter 830: Permit Suspension

1

On September 18, 2020 TCE sought to remove the State Court Complaint to Federal Court asserting that the claims arise under the Constitution of the United States, including, among other things, the First Amendment and the Fourteenth Amendment." (Ex. B: *Notice of Removal* at ¶3b.) On September 21, 2020 TCE and the ACHD participated in a status conference held in State Court during which Judge McVay held that because the case was removed to Federal Court he had no jurisdiction over the matter unless it was remanded. (Ex. C – *Order of State Court.*) The Notice of Removal filed by TCE was denied by the Federal Court and the case was remanded back to State Court on October 7, 2020. (20-cv-01418, ECF #15.) On October 9, 2020, TCE filed a Suggestion of Bankruptcy in State Court. (Ex. D- *Suggestion of Bankruptcy*.) On October 15, 2020 TCE filed a notice of removal of the State Court matter to Bankruptcy Court. (Ex. E – *State Court Notice of Removal*.) There has been no final ruling on the request to remove the State Court matter to Bankruptcy Court. The ACHD has opposed the removal and there is currently a status conference scheduled for December 15, 2020, to discuss the removal, lifting the stay, and remanding the matter to State Court. (Ex. F – *Status Conference Order*.)

**B. Federal Court Proceeding**

Plaintiff TCE filed the instant matter with this Honorable Court on September 23, 2020. (Compl. ECF #1.) On October 23, 2020 TCE filed a Motion to Refer this matter to Bankruptcy Court (ECF #16.) There has been no final order on the Motion.

## II.      FACTUAL BACKGROUND

The Plaintiff is the Cracked Egg, LLC, a limited Liability Company that operates a restaurant in the Brentwood neighborhood of the City of Pittsburgh. (Compl. at ¶¶1,6.)

On March 6, 2020, Pennsylvania Governor Tom Wolf issued a Proclamation of Disaster Emergency in response to the COVID-19 pandemic. (Compl. at ¶9.) The Governor has extended the Disaster Proclamation two times -on June 3, 2020 and on August 31, 2020. (Compl. at fn1.) In Connection with the Governor's Disaster Proclamation, on July 1, 2020, and in order to protect the public from the spread of COVID-19, the Secretary of the Pennsylvania Department of Health issued an Order "requiring universal face coverings." (Compl. at ¶12.) Section 2 of the Universal Face Coverings Order requires the use of face coverings at indoor locations where the public is generally admitted and while engaged in work, including at restaurants. (Compl. at Ex. D.)

On July 16, 2020 Governor Wolf Issued an Order Directing Targeted Mitigation Measures. Section 1.B.i of the Targeted Mitigation Order requires, inter alia, restaurants to limit occupancy to 25% of stated fire code maximum occupancy for indoor dining and to limit occupancy at discrete indoor events or gatherings to 25 persons including staff. (Compl. at ¶¶14,15.) Section 7 of the Targeted Mitigation Order states, "Enforcement of this Order will begin on the effective date. All Commonwealth agencies involved in the licensing or inspection of any of the above-described facilities are directed to increase their enforcement efforts to ensure compliance with these critical mitigation measures. All local officials currently involved or able to be involved in the Commonwealth's enforcement efforts are called upon to enforce these critical mitigation measures. (Compl. at Ex. E.)

In accordance with the COVID-19 universal face coverings Order, TCE must require all employees and patrons to wear face coverings when on the premises of the facility. On or about June 19, 2020, the ACHD began receiving complaints from the public regarding TCE's

failure to comply with the COVID-19 Control Measure Orders. (State Court Compl. at ¶16.)[1] In response to these citizen complaints, the ACHD sent representatives to investigate the compliance status of TCE on July 1, 2020. (State Court Compl. at ¶28.) During this visit the ACHD representatives provided TCE with guidance on control measure order compliance. (State Court Compl. at ¶ 28) After repeated civilian complaints following the first cite visit, the ACHD again sent representative to investigate compliance status of TCE on July 28th, August 5th, and August 7th. (State Court Compl. at ¶¶30-35.) During each of these visits the ACHD representatives observed public facing employees working without wearing facemasks and patrons admitted to the facility without facemasks. (State Court Compl. at ¶¶30-35.) The ACHD representatives, again, on each visit provided guidance on control measure order compliance. (State Court Compl. at ¶¶30-35.) On August 11, 2020, ACHD representatives conducted a partial onsite reinspection to assess COVID-19 compliance. During this onsite inspection, ACHD representatives observed public-facing employees working without wearing face masks and a patron admitted into the facility without a face mask. (State Court Compl. at ¶36.) It was only after this fifth visit that the ACHD issued a Permit Suspension Order to TCE a due to continued non-compliance and imminent danger to public health. (State Court Compl. at ¶37.) TCE does not contest that its employees and patrons were not wearing masks during these visits. (*See* Compl. *generally.)* The Permit Suspension Order was based solely on TCE's continuous failure to comply with the Secretary's Order of July 1, 2020 "requiring universal face coverings." (Compl. at ¶¶19,20.)

---

[1] Plaintiff in ¶24 of its Complaint has incorporated the averments of the [State Court] Complaint as if set forth in their entirety. The State Court Complaint filed by the Allegheny County Health Department is attached to this brief at Exhibit A.

The Permit Suspension Order would be lifted when TCE corrected all emergency violations. i.e. wear proper face coverings. (Compl. at Ex. F, G.) The Permit Suspension Order also provides for a process to appeal the suspension. (Compl. at Ex. F, G.) Plaintiff TCE never availed itself of the established appeal process. (*See* Compl, *Generally*; State Court Compl. at ¶47.) Even though it is illegal to operate a food facility in Allegheny County without a health permit, during on-site observations conducted on August 24, 2020 through August 28, 2020, inclusive, August 31, 2020 through September 4, 2020, inclusive, and September 10, 2020, ACHD representatives observed continued operations at TCE in violation of the Permit Suspension Order. (Compl. at Ex. G; State Court Compl. at ¶43) During those on-site visits, ACHD representatives also observed continued violations of the COVID-19 Control Measure Orders. (State Court Compl. at ¶43) It was also observed during this time that TCE had both concealed and removed the closure placard placed by the ACHD on its facility. (State Court Compl. at ¶¶ 44,45). The restaurant's deliberate disregard of the Permit Suspension Order and continued operation without a health permit necessitated the commencement of the enforcement action filed by the ACHD in State Court. (State Court Compl. at ¶48.)

### III. ARGUMENT

**A. Younger Abstention Precludes Federal Intervention in This Matter**

Plaintiff is attempting to have this Honorable Court intervene in an ongoing State Court proceeding. This Court should decline to do so pursuant to the doctrine of abstention established in *Younger v. Harris,* 401 U.S. 37 (1971). Under the Younger abstention doctrine, "federal courts *must* abstain in certain circumstances from exercising jurisdiction over a claim where resolution of that claim would interfere with an ongoing state proceeding." *Miller v. Mitchell,* 598 F.3d 139, 145 (3d Cir. 2010) (*emphasis added*). While Younger itself

involved a criminal case, its mandates have been applied in "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Juidice v. Vail,* 430 U.S. 327, 336, n. 12 (1977) (*civil contempt order*). The Younger abstention doctrine "reflects a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." Hill v. Barnacle, 523 Fed. Appx. 856, 857 (3d Cir. 2013) (quoting Gwynedd Properties, Inc. v. Lower Gwynedd Twp., 970 F.2d 1195, 1199 (3d Cir.1992)). A federal court must abstain when the following requirements are met:

    1) the state proceedings are judicial in nature,
    2) the proceedings implicate important state interests, and
    3) the federal plaintiff has an adequate opportunity in the state proceedings to
    raise constitutional challenges.

*Middlesex County Ethnics Comm. v. Garden State Bar Assoc.*, 457 U.S. 423, 432 (1982); *FOCUS v. Allegheny Cnty. Ct. Com. Pl.,* 75 F.3d 834, 843 (3d Cir. 1996). Plaintiff TCE has been actively litigating this matter in State Court at GD-20-00-9809. If this Court allowed TCE to proceed past this stage, it would be intervening in an active matter in State Court.

The second requirement of this test is also met. The proceedings implicate the health and welfare of the citizens of Pennsylvania. The protection of public health by attempting to stop the spread of COVID-19 is a compelling state interest. 'States traditionally have had great latitude under their police powers to legislate as to the protection of the lives, limbs, health, comfort, and quiet of all persons.'" *Zahl v. Harper,* 282 F.3d 204 (3rd Cir. 2002), *quoting* *Medtronic, Inc. v. Lohr,* 518 U.S. 470, 475, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996). power to establish and enforce health standards "is a vital part of a state's police power." *Zahl v. Harper,* 282 F.3d 204 (3rd Cir. 2002), *quoting* *Brodie v. State Bd. of Med. Exam'rs,* 177 N.J.Super. 523, 427 A.2d 104, 108 (1981). Our Constitution principally entrusts "[t]he safety

and the health of the people" to the politically accountable officials of the States "to guard and protect." *Jacobson v. Massachusetts*, 197 U. S. 11, 38 (1905). When those officials "undertake to act in areas fraught with medical and scientific uncertainties," their latitude "must be especially broad." *Marshall v. United States*, 414 U. S. 417, 427 (1974). Where those broad limits are not exceeded, they should not be subject to second-guessing by an "unelected federal judiciary," which lacks the background, competence, and expertise to assess public health and is not accountable to the people. *Philadelphia Restaurant Owners Against Lockdown, LLC v. Kenney*, 2020 WL 6866560 at 1 (E.D. Pa. November 20, 2020) c*iting* *Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528, 545 (1985).

Third, the state proceedings must afford an adequate opportunity to raise federal claims. The state court proceedings here are able to do just that. TCE in its motion to attempt to remove the State Court case to Federal Court acknowledged that "the claims arise under the Constitution of the United States, including, among other things…the Fourteenth Amendment." (2:20-cv-01418, ECF #1.) Additionally, TCE goes on to say in its request to remove the State Court matter to Bankruptcy Court that it "expects to prove not only that it has complied with all properly enacted laws, rules and regulations, and that ACHD lacks a basis to take such action, but that [TCE] has counterclaims against ACHD for violations of its civil rights, for which the [TCE] intends to seek monetary damages…."(Ex. E - *Notice of Removal.*) Furthermore, in its Motion to Refer this matter to Bankruptcy Court, Plaintiff TCE admits that the instant matter "was brought to seek redress of Defendants' violation of Plaintiff's civil rights, including the filing of state court litigation." (ECF #16.)

From its own filings, it is quite clear that TCE will be raising the same federal claims asserted in this matter as defenses to the ongoing State Court matter. This is not a situation

7

in which a state court is "incapable of fairly and fully adjudicating the federal issues before it" sufficient to create "an extraordinarily pressing need for immediate federal equitable relief." *Kugler v. Helfant,* 421 U.S. 117 (1975); *see also* Gonzalez v. Waterfront Comm'n of N.Y. Harbor, 755 F.3d 176, 184 (3d Cir. 2014) (holding that state law must "clearly bar" the chance to raise federal claims); Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 15 (1987) (holding that a federal court should assume that state court appellate proceedings will afford an adequate remedy for federal claims).

For these reasons, this Court must abstain from hearing this case.

### B. ELEVENTH AMENDMENT IMMUNITY: COUNTS 1-3

Counts one through three of Plaintiff's complaint amount to nothing more than strained state law challenges to the *State's* COVID-19 regulations. Plaintiff has failed to plead a viable cause of action against Defendants. Neither Allegheny County nor the ACHD are mentioned once throughout the three counts. It is not discernable from the Complaint how Allegheny County or the ACHD could be held liable for anything under these counts.

The Eleventh Amendment has been interpreted to make states generally immune from suit by private parties in federal court. *Board of Tr. of Univ. of Alabama v. Garrett,* 531 U.S. 356 (2001); *College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 669–70 (1999); *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 267 (1997); *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 54 (1996) This immunity extends to state agencies and departments. *C.H., ex rel. Z.H. v. Oliva,* 226 F.3d 198, 201 (3d Cir.2000) (en banc). Eleventh Amendment immunity is subject to three exceptions: 1) congressional abrogation, 2) state waiver, and 3) suits against individual state officers for prospective relief

to end an ongoing violation of federal law. *MCI Telecomm. Corp. v. Bell Atl. Pa.*, 271 F.3d 491, 503 (3d Cir. 2001).

None of these exceptions are present in Counts one through three. Counts one, two, and three of Plaintiff's complaint include causes of action arising only under Pennsylvania law.[2] (Commonwealth Documents Law 45 P.S. 1102 et seq.; Regulatory Review Act 71 P.S. 745.1 et seq.; 35 Pa.C.s. 7301(c) General Authority of the Governor; Commonwealth Attorneys Act 71 P.S. 745.1 et seq.; Separation of Powers Claim PA CONST Art. 3, § 9[3].) Counts one through three are in substance an attack on the State's public health orders. The adopted regulations apply statewide, and its regulations do not provide counties with the authority to relax the State restrictions. Accordingly, the causes of action against the County Defendants are barred by the Eleventh Amendment. The Supreme Court explains: "[A] federal suit against state officials on the basis of state law contravenes the Eleventh Amendment when … the relief sought and ordered has an impact directly on the State itself." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 117 (1984). Plaintiff is asking to have the State's Emergency Orders invalidated. This relief clearly has an impact directly on the State of Pennsylvania.

For these reasons counts one, two, and three should be dismissed with prejudice.

---

[2] To the extent TCE is attempting to assert a § 1983 action against Allegheny County and ACHD under Counts 1-3, it must also fail for this reason. Section 1983 "is a **vehicle for** imposing liability against anyone who, under color of state law, deprives a person of rights, privileges, or immunities secured by the Constitution and laws." *Grammer v. John J. Kane Reg'l Ctrs.*, 570 F.3d 520, 525 (3d Cir. 2009). To succeed on a § 1983 claim, "a plaintiff must show that the defendants, acting under color of law, violated the plaintiff's federal constitutional or statutory rights, and thereby caused the complained of injury." *Elmore v. Cleary,* 399 F.3d 279, 281 (3d Cir. 2005) Plaintiff has alleged no Constitutional violations in Counts 1-3.

[3] This Issue has already been decided by the Pennsylvania Supreme Court in *Wolf v. Scarnati*, 233 A.3d 679 (Pa. 2020).

## C. PROCEDURAL DUE PROCESS CLAIMS – NO VIOLATION

To survive a motion to dismiss a procedural due process claim, a plaintiff is required to plead facts supporting allegations that "(1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law." *Hill v. Borough of Kutztown,* 455 F.3d 225, 233-34 (3d Cir. 2006) quoting *Alvin v. Suzuki,* 227 F.3d 107, 116 (3d Cir.2000)). A due process violation "is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process." *Zinermon v. Burch,* 494 U.S. 113, 126, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). If there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants. *McDaniels v. Flick,* 59 F.3d 446, 460 (3d Cir. 1995). The Third Circuit has held that a plaintiff may not maintain a federal due process lawsuit when he or she could have taken advantage of an adequate state post deprivation remedy but did not. *Elsmere Park Club, L.P. v. Town of Elsmere,* 542 F.3d 412, 420 (3d Cir. 2008).

### i.  *Suspension and Closure Notice*

TCE has plead no facts to support its contention that ACHD suspended its health permit without prior notice and opportunity to be heard. Alternatively, the facts included within the complaint support the opposite. The ACHD visited TCE five times before suspending its health permit. Each time alerting TCE of its violations and providing guidance on how to come into compliance. TCE chose to ignore the multiple notices provided by the ACHD as well as the mandatory orders issued by the State. Furthermore, as per the Permit Suspension Notice issued by the ACHD to TCE, Plaintiff had an opportunity to schedule a

hearing and or appeal the suspension and chose not to do so. The Allegheny County Code provides that:

> If the Director finds there is imminent danger to the public health the permit shall immediately be suspended. Any person whose permit has been suspended under this section shall upon written request be entitled to a hearing pursuant to Article XI, Hearings and Appeals, of the Allegheny County Rules and Regulations.

Allegheny County Code § 830-38(A). The Allegheny County Code sets forth full and complete appeal and hearing processes for anybody aggrieved by a decision of the ACHD. (Allegheny County Code §§ 805-4,5.)

As a matter of due process, "summary administrative action may be justified in emergency situations." [Elsmere Park Club, L.P. v. Town of Elsmere, 542 F.3d 412, 417 (3d Cir. 2008)](#) In [Elsmere Park](#), the Third Circuit affirmed a grant of summary judgment against a [Section 1983](#) plaintiff when the town summarily condemned an apartment due to a severe mold problem. [Id. at 417-20](#). The Third Circuit concluded that due process was satisfied because the town provided the plaintiff with "adequate means of appealing the condemnations at issue." [Id. at 423](#). The [Elsmere Park](#) court looked to the local code, noting that the plaintiff had an avenue to challenge the condemnations through the town's Board of Adjustment – an appellate forum established as part of the town's zoning code. [Id. at 422](#). Like the town in [Elsmere Park](#), the Allegheny County Code at section 805 states, "Any person aggrieved by an action of the Department and who has a direct interest in such action may file a notice of appeal." Furthermore, any party who is aggrieved by any decision of the Director rendered pursuant to § 805 of the Allegheny County Code may appeal therefrom to the Court of Common Pleas of Allegheny County as provided by law. (Allegheny County Code

11

§ 805-10.) Consequently, Plaintiff TCE's failure to "take advantage" of the appeals process "means that [it] cannot claim a constitutional injury." *Elsmere Park,* 542 F.3d at 423.

> *ii. Service of State Court Complaint and Emergency Motion*

Plaintiff's Due Process claim with respect to service of the State Court Complaint and Emergency Motion must fail as well. The Pennsylvania Rules of Civil Procedure require original process within the Commonwealth to be served within 30 days after the issuance of the writ or the filing of the complaint. **Pa**. R. Civ. P. **401**(a). In compliance with this rule, TCE was properly served with process by the Sheriff on October 1, 2020. [4] (Ex. G - *Sheriff's Return.*)[5] Furthermore, On September 18th, two days after the State Court Complaint and Motion were filed and two days before the emergency hearing was to be held, Plaintiff TCE filed a Notice of Removal to Federal Court. Solely based on its own actions, it is quite clear that TCE had adequate notice of the Complaint and Motion. TCE has been actively engaged and participating in the State Court matter the entire time. Furthermore, as of the date of this filing, no emergency hearing has been held in State Court and there has been no decision rendered in the matter. There has been no deprivation. Plaintiff TCE has not and cannot plead facts necessary to support its allegation that an alleged failure to properly serve the

---

[4] In addition to properly serving the Complaint, ACHD emailed courtesy copies of the Complaint and Emergency Motion to TCE on September 17, 2020, one day after it was filed, and again on September 18, 2020. (Compl. at ¶¶29,30.)

[5] While a court typically does not consider matters outside the pleadings, it may consider documents that are "integral to or explicitly relied upon in the complaint" or any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document[.]" *In re Rockefeller Ctr. Props., Inc. Sec. Litig.,* 184 F.3d 280, 287 (3d Cir. 1999) (emphasis and citations omitted); *see also In re Asbestos Prods. Liab. Litig. (No. VI),* 822 F.3d 125, 133 n.7 (3d Cir. 2016); *Schmidt v. Skolas,* 770 F.3d 241, 249 (3d Cir. 2014), *Arcand v. Brother Int'l Corp.,* 673 F. Supp. 2d 282, 292 (D.N.J. 2009) (court may consider documents referenced in complaint that are essential to plaintiff's claim).

State Court Complaint (1) deprived it of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' or (2) the procedures available to him did not provide 'due process of law.' " Hill, 455 F.3d at 233–34.

For the foregoing reasons TCE's due process claims must be dismissed with prejudice.

**D. Substantive Due Process – No Violation**

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law...." U.S. Const. Amend. XIV. "Substantive due process is a 'component of the [Fourteenth Amendment] that protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them.' " Wrench Transp. Sys., Inc. v. Bradley, 340 F. App'x 812, 815 (3d Cir. 2009) (internal quotations omitted) (quoting Collins v. City of Harker Heights, 503 U.S. 115, 125, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992)). "Substantive due process refers to and protects federal rights." Ransom v. Marazzo, 848 F.2d 398, 411 (3d Cir. 1988) That being so, the analysis of any substantive due process claim "must begin with a careful description of the asserted right[.]" Reno v. Flores, 507 U.S. 292, 302 (1993). To be protected, the "asserted right" must be "fundamental"—arising from the Constitution itself, and not from state law. Id.

Here, TCE is basing its substantive due process claim premised on "[t]he Owners' right to earn a living." The owners of TCE, however, are not parties to this action. TCE does not have an absolute right to engage in economic activity as it sees fit. This is not the law. Nor does such a claim provide viable support for a violation of substantive due process. Moreover, a Third Circuit panel in an unpublished opinion explicitly rejected the argument that there is any fundamental right to earn a living. Wrench Transp. Sys., Inc. v. Bradley, 340

13

F. App'x. 812, 815 (3d Cir. 2009) ("[T]he right to 'engage in business'" is "more similar to the type of intangible employment rights that this Court has rejected as not protected by substantive due process than the real property interests which can be protected by substantive due process"). More recent decisions by and within the Third Circuit have cited to this holding approvingly. *See*, *e.g.*, Joey's Auto Repair & Body Shop v. Fayette Cnty., 785 F. App'x 46, 50 (3d Cir. 2019) (noting that "a substantive due process right to conduct business without zoning interference extends beyond our precedent"); Saucon Valley Manor, Inc. v. Miller, 392 F. Supp. 3d 554, 571-72 (E.D. Pa. 2019) (holding that "neither the right to operate a business nor the property interest in a business license are 'fundamental' rights or property interests protected by substantive due process").

Plaintiff TCE's reliance on *County of Butler v. Wolf* is misplaced.[6] *County of Butler* dealt with a challenge to the State's order closing "non-life-sustaining" businesses. County of Butler v. Wolf, 2020 WL 5510690 at 1 (W.D. Pa. Sept. 14, 2020). The court in *County of Butler* deemed the measure to be "a total shutdown of a business with no end-date…." Id. at 26;(Compl. at ¶86). Here, TCE is challenging an order that limits a restaurants capacity to 25% occupancy. TCE cannot maintain a substantive due process claim against Allegheny County or the ACHD when neither Defendant is responsible for enacting the mitigation orders at issue. For this reason alone, TCE's substantive due process claim must fail. Furthermore, this is not a "total shutdown of a business" and consequently does not amount to a deprivation of one's right to work.

---

[6] On October 1, 2020, the Court of Appeals for the Third Circuit stayed the district court's order in *County of Butler* pending appeal. Cnty. of Butler, et al. v. Governor of Pa., 2020 WL 5868393 (3d Cir. Oct. 1, 2020).

14

TCE avers in its Complaint that the ACHD ordered the restaurant closed solely for its failure to comply with mask or facial covering guidelines. (Compl. at ¶¶19,20.) Plaintiff TCE has not plead facts to support a contention that wearing a facial covering interferes in any way with the "right to earn a living." The ACHD was forced to suspend TCE's health permit because of its deliberate and continuous failure to comply with the State's facial coverings mandate. Moreover, unlike the total shutdown of non-essential business with "no end date,"[7] the health permit suspension is a temporary measure that is solely contingent upon TCE's own actions. In order to have its permit reinstated, all TCE has to do is comply with the facial coverings mandate. Furthermore, TCE has not averred in its complaint that it has ever shut down the restaurant pursuant to the ACHD's notice suspending its health permit. In fact, the complaint filed in State Court that TCE has incorporated into its Compliant in its entirety proves the opposite. Case law strongly suggests that Substantive Due Process only extends to situations in which there is some degree of permanence to the loss of liberty or property. *Paradise Concepts, Inc. v. Wolf*, 2020 WL 5121345 at *4 (E.D. Pa. Aug. 31, 2020) *citing* *Six v. Newsom*, 462 F. Supp. 3d 1060, ––––, No. 20-877, 2020 WL 2896543, at *7 (C.D. Cal. May 22, 2020) (holding that the right to earn a living "protects against 'a complete prohibition of the right to engage in a calling' and not against brief interruptions to that pursuit" (quoting *Conn v. Gabbert*, 526 U.S. 286, 292, 119 S.Ct. 1292, 143 L.Ed.2d 399 (1999)).

Lastly, Plaintiff TCE has failed to plead facts to support a conscience-shocking deprivation of their constitutional rights by either Allegheny County or the ACHD. The Supreme Court has "emphasized time and again that '[t]he touchstone of due process is protection of the individual against arbitrary action of government.'" *County of Sacramento*

---

[7] Quoting from *County of Butler v. Wolf*, 2020 WL 5510690 at 1 (W.D. Pa. Sept. 14, 2020).

*v. Lewis*, 523 U.S. 833, 845 (1998) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974)). "[O]nly the most egregious official conduct can be said to be arbitrary in the constitutional sense." *Id.* at 846. In other words, "the due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm." *Id.* at 848. With this backdrop, the Supreme Court held that state action violates due process only when it "shocks the conscience." *Id.* at 846.

For all of these reasons, Plaintiff's substantive due process claim fails as a matter of law and must be dismissed with prejudice.

### E. EQUAL PROTECTION – NO VIOLATION

The 14th Amendment's Equal-Protection Clause commands that, "no State shall ... deny to any person within its jurisdiction the equal protection of laws." U.S. Const. Amend. XIV, § 1. Equal protection does not mean all forms of differential treatment are forbidden. *Nordlinger v. Hahn*, 505 U.S. 1, 10, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992) ("Of course, most laws differentiate in some fashion between classes of persons. The Equal Protection Clause does not forbid classifications."). Instead, equal protection "simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." *Id*. The Equal Protection Clause, "is essentially a direction that all person similarly situated should be treated alike." *City of Cleburne, Tex. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed. 2d 313 (1985). Plaintiff TCE has not plead how it has been treated differently from other *similarly situated* people. Plaintiff TCE has not plead any constitutional right that has been violated. Plaintiff TCE in this count focuses solely on the State's restriction on occupancy limits. As TCE avers in its Complaint, the ACHD ordered the restaurant closed solely for its failure to comply with mask or facial covering guidelines. (Compl. at ¶¶ 19,20.)

Plaintiff TCE has not and cannot plead facts sufficient to sustain an equal protection violation solely based on the ACHD's suspension of TCE's health permit for its willful violation of the State's mask order.

For these reasons TCE's equal protection claim must be dismissed with prejudice.

## IV. CONCLUSION

For the foregoing reasons, Defendants respectfully request that this honorable Court grant the present MOTION TO DISMISS PLAINTIFF'S COMPLAINT in its entirety with prejudice. Any attempt or request on the part of Plaintiff for leave to amend its Complaint must be denied as futile since it is clear that the underlying actions upon which it relies are simply insufficient to support the claims asserted.

Respectfully submitted,

*/s/ Frances Marie Liebenguth*
Frances Marie Liebenguth
Assistant County Solicitor
Pa. I.D. #314845

ALLEGHENY COUNTY LAW DEPARTMENT
300 Fort Pitt Commons Building
445 Fort Pitt Boulevard
Pittsburgh, PA 15219
(412) 350-1108

Frances.Liebenguth@AlleghenyCounty.us

/s/ Vijyalakshmi Patel
Vijyalakshmi Patel, Esq.
Attorney for the Plaintiff ACHD
301 39th Street, Bldg. No. 7
Pittsburgh, PA 15201-1891
(412) 578-2653

Vijya.Patel@AlleghenyCounty.US